Warren R. Paboojian, No. 128462
wrp@bplaw-inc.com
Adam B. Stirrup, No. 257683
abs@bplaw-inc.com
BARADAT & PABOOJIAN, INC.
720 West Alluvial Avenue
Fresno, California 93711
Telephone: (559) 431-5366
Facsimile: (559) 431-1702

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN FLANIGAN; CAMBRIA ROSS; COURTNEY GEBHART; DEBRA GUIFFRIDA; DENISE TAYLOR; EMILY McNEIL; KENNETH SNELL; MARY EVERETT; KERRY URQUHART; LINDA RUBIO; LYNN GROUNDWATER; RACHEL WINCH; NOAH OLMSTEAD; KIMBERLY GIRARD; BRAD YOUNG; ADRIENNE YOUNG; ASHLEY YOUNG, a minor, by and through her Guardian ad Litem, ADRIENNE YOUNG; CATHRYN BELMONT; GRACE BELMONT, a minor, by and through her Guardian ad Litem, CATHRYN BELMONT; CHRISTINE SAUNDERS; KIM SAUNDERS, a minor, by and through her Guardian ad Litem, CHRISTINE SAUNDERS; CLAIR HILCHIE SCHMIDT; LAUREN HILCHIE SCHMIDT, a minor, by and through her Guardian ad Litem, CLAIR HILCHIE SCHMIDT; DENA AMADOR; REAGAN AMADOR, a minor, by and through her Guardian ad Litem, DENA AMADOR; JEANETTE BURSON; TAYLOR BURSON, a minor, by and through her Guardian ad Litem, JEANETTE BURSON; KAREN ERICKSON; SALLY ERICKSON, a minor, by and through her Guardian ad Litem, KAREN ERICKSON; KIMBERLY SARKHOSH; FRANCESCA SARKHOSH, a minor, by and through her Guardian ad Litem, KIMBERLY SARKHOSH; RENE POLANCO; PAYTON POLANCO, a minor, by and through her Guardian ad Litem, RENE POLANCO; TYCE FERGUSON; KATHY FERGUSON; RILEY FERGUSON, a minor, by and through her Guardian ad Litem, TYCE FERGUSON; NEIL BURSON; BRENDA BURSON; JESSICA MARIE BURSON, a minor, by and through her | Case No.<br><br>**PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM FOOD AND DRUG ADMINISTRATION ("FDA")** |

Guardian ad Litem, NEIL BURSON; JOHN JACOBI; MORGAN JACOBI, a minor, by and through her Guardian ad Litem, JOHN JACOBI; GEMMA BLUMENSHINE, a minor, by and through her Guardian ad Litem, NADINE BLUMENSHINE; SYDNEY LOUCKS, a minor, by and through her Guardian ad Litem; AARON LOUCKS; and KENNA SCOTT, a minor, by and through her Guardian ad Litem, SHERA SCOTT,

Plaintiffs,

vs.

WESTERN MILLING, LLC, dba OH KRUSE GRAIN & MILLING; and DOES 1 to 20, inclusive,

Defendants.

Plaintiffs, by and through their attorneys of record, Baradat & Paboojian, Inc., hereby move this Court for entry of an Order compelling the U.S. Food and Drug Administration ("FDA") to produce FDA Employee, Thomas Gordon, for a brief deposition at a date and time convenient for the FDA and Mr. Gordon, as soon as reasonably possible, in their underlying state court action filed in Fresno County Superior Court as Case No. 16CECG01874. (Stirrup Decl. ¶ 4, Exhibit "C.")

## OVERVIEW

On February 2, 2018, after several unreturned phone calls and messages, Plaintiffs' counsel sent a letter to Douglas Stern, Director of the FDA requesting four hours to take the deposition of Mr. Gordon. (Stirrup Decl. ¶ 2, Exhibit "A.") On March 12, 2018, Plaintiffs' counsel sent a letter to Douglas Stern explaining the importance of Thomas Gordon's deposition testimony. (Stirrup Decl. ¶ 2, Exhibit "B.") As set forth in the letter, Mr. Gordon's testimony is essential and unobtainable from any other source. (Stirrup Decl. ¶¶ 2 and 3, Exhibits "A" and "B.") The FDA's refusal to provide this modest discovery cannot be justified under the broad scope of discovery. The requested discovery is limited in nature, not available through less intrusive means, and not unduly burdensome. Moreover, the grounds advanced by the FDA for resisting discovery are arbitrary and capricious, and lack any substantive basis. There is no indication that the FDA made any effort to discern the magnitude of inconvenience involved in Plaintiffs' request, nor considered whether any accommodations might be made to permit this essential

deposition to be completed. Rather, every indication is that the FDA's denial letters are automatic form letters that deny all such requests, categorically refusing to even contemplate letting the discovery take place.

Plaintiffs' counsel have continually shown that this is a case of public interest. This lawsuit promotes the objectives of the FDA. Specifically, it promotes the FDA in informing the public that the government, specifically the FDA, will not tolerate cross-contaminations and/or poisoning of animals. If the FDA rules and regulations are not followed, there will be civil consequences both by private individuals and the government. The advancement of the FDA mission is to hold companies accountable for their conduct and for rules and regulations to be followed that are promulgated by the FDA. This lawsuit and Mr. Gordon's testimony further promotes the FDA because not only does this case have significant impact on Plaintiffs, but it also has significant impact on our community and other manufacturers of feed all over the U.S. The willful violations by Western Milling, as outlined in this lawsuit regarding the FDA's investigation that Mr. Gordon conducted, are paramount in advancing the FDA's mission. (Stirrup Decl. ¶ 2, Exhibit "A.")

Accordingly, Plaintiffs hereby ask this Court to order the FDA to permit this discovery to take place.

## FACTUAL BACKGROUND

The underlying state court action filed in Fresno County Superior Court arises out of Defendant, Western Milling's sale of toxic horse feed to Plaintiffs, which severely sickened twenty-nine and killed another twenty of Plaintiffs' beloved and valuable show horses, leaving their owners devastated. (Stirrup Decl. ¶ 4.)

Western Milling's representations and promises about the horse feed were not true. (Stirrup Decl. ¶ 5.) The horse feed was in fact poisonous to horses and contaminated with an antibiotic called monensin, which is toxic to horses in any amount. (Stirrup Decl. ¶ 5.)

Western Milling has a long track record of manufacturing and selling monensin-contaminated animal feed that caused the deaths of hundreds of animals and resulted in numerous investigations by federal and state authorities, including the U.S. Food & Drug Administration ("FDA"). (Stirrup Decl. ¶ 6.)

Western Milling was investigated by the FDA since 2009. (Stirrup Decl. ¶ 5.) FDA Employee, Thomas Gordon, was the investigator assigned to Western Milling and an integral part of the FDA's investigation of Western Milling in this matter and since 2009. (Stirrup Decl. ¶ 7.) Partially as a result of the FDA investigation, Western Milling was sanctioned, and the State Attorney General's Office filed a lawsuit in 2016, for its violations of Food and Agricultural Code sections 1504, 1499. (Stirrup Decl. ¶ 7.)

FDA Employee, Thomas Gordon, was an integral part of the FDA's investigation of Western Milling in this matter. (Stirrup Decl. ¶ 8.) As such, his deposition testimony is an integral part of Plaintiffs' lawsuit, and on March 20, 2018, Mr. Gordon was personally served with a subpoena to appear for his deposition. Mr. Gordon did not appear for his deposition and his non-appearance was taken by certified court reporter. (Stirrup Decl. ¶ 9, Exhibit "D.") In two separate letters dated January 1, 2018 and April 2, 2018, the FDA refused to allow Mr. Gordon to be deposed. (Stirrup Decl. ¶ 10, Exhibits "E" and "F.")

**A. Required Deposition Testimony of FDA Employee, Thomas Gordon.**

In the FDA's January 17, 2018 letter to Plaintiffs, the FDA rejected Fresno County Superior Court's state subpoena commanding Mr. Gordon to give deposition testimony in this matter. (Stirrup Decl. ¶ 10, Exhibits "E" and "F.") "Your subpoena request for the testimony of an FDA employee does not meet the requirements of 21 C.F.R. § 20.1." The FDA objected on several grounds: (1) "authorizing employees to testify in litigation to which FDA is not a party would divert manpower and resources from FDA's public health mission, and therefore, does not serve the public health interest; (2) "you failed to adequately describe how the requested testimony would promote the objectives of the ... FDA"; and (3) "you have provided no evidence that the testimony of the FDA employee(s) will advance the mission of the agency." (Stirrup Decl. ¶ 10, Exhibit "E.")

Plaintiffs explained in their February 2, 2018 letter as follows:

Mr. Gordon was instrumental in a major investigation that spanned over six years involving a company that intentionally, willfully and maliciously harmed animals throughout California and Arizona; Western Milling was investigated by the FDA since 2009; this civil case is a huge public interest matter that has not only received media attention throughout the state, but consumer groups are watching this

case to make sure that other feed manufacturing companies do not feel complacent in their practices; even after the FDA continually warned Western Milling that their practices would harm the public and result in civil and criminal penalties, they failed to adhere to the FDA's recommendations; Mr. Gordon was an integral part of the investigation and no other witness or investigator has more information historically as to this matter; Mr. Gordon's deposition will be no more than four hours; Mr. Gordon's testimony will help advance the mission of the FDA by further publicizing the need for quality control and adherence to federal and state regulations; and Mr. Gordon has personal knowledge from interviews with Western Milling's CEO. (Stirrup Decl. ¶ 2, Exhibit "A.")

## LEGAL ARGUMENT

### A. The Federal Rules of Civil Procedure Favor Broad Discovery from Third Parties Absent Undue Burden or Less Burdensome Alternatives.

Absent a showing of undue burden, or that the discovery being sought is cumulative or could be obtained by other more convenient, less burdensome means, the Federal Rules of Civil Procedure require disclosure of all relevant, non-privileged information so that the final resolution of a dispute may be based on a full and accurate understanding of the facts, and thereby promote a fair and just result. (*United States v. Proctor & Gamble Co.*, (1958) 356 U.S. 677, 682; FED. R. CIV. P. 26(b)(2)(C)(iii).) To promote that end, in assessing the bounds of permissible discovery federal courts construe relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." (*Oppenheimer Fund, Inc. v. Sanders* (1978) 437 U.S. 340, 351.) Rule 45 applies the same breadth and undue burden considerations embodied in Rule 26(b) to discovery requests directed at third-parties. Plaintiffs disputed discovery falls well within the boundaries of permissible, reasonable discovery and should be permitted given how central it is to the issues in this case and the minimal inconvenience it would pose to the FDA.

### B. The Court Should Compel the FDA to Permit the Disputed Discovery to Take Place under the Administrative Procedure Act.

This Court has the authority to review and shall review the FDA's decision under the Administrative Procedure Act's (5 U.S.C. §§ 551, et seq.) ("APA") "arbitrary and capricious standard because the APA contains the waiver of sovereign immunity that allows review of the decision at all."

(*Johnson v. Folino*, 528 F. Supp. 2d 548, 550 (E.D. Pa. 2007).)

The standard of review that applies under the APA approach is as follows:

The Court may overturn the agency action if the Agency's refusal to authorize the testimony was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." (5 U.S.C. § 706(2)(A).) "To determine whether an agency decision was arbitrary and capricious, the reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." (*N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990) [quoting *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989)].)

In *Touhy v. Ragen*, the Supreme Court ruled that an FBI agent could not be held in contempt for refusing to obey a subpoena duces tecum when the Attorney General, acting pursuant to valid federal regulations governing the release of official documents, had ordered him to refuse to comply. (340 U.S. 462 (1951).) However, the Court specifically refused to reach the question of the agency head's power to withhold evidence from a court without a specific claim of privilege. Section 301 "does not authorize withholding information from the public or limiting the availability of records to the public." (U.S.C. § 301.)

In *Chrysler Corp. v. Brown*, the Supreme Court acknowledged that section 301 did not provide substantive rules regulating disclosure of government information. The Court held that the statute is simply a housekeeping statute, authorizing what the APA terms rules of agency organization, procedure or practice as opposed to substantive rules. The Court noted that nothing in section 301's legislative history indicated that Congress intended the statute to be a grant of authority to withhold information from the public. (441 U.S. 281, 310 (1978).) This section does not authorize withholding information from the public or limiting the availability of records to the public. (U.S.C. § 301 (1982).) The second sentence of section 301 was added by Congress in 1958. According to the legislative history, Congress was concerned that the statue had been "twisted from its original purpose as a housekeeping statute into a claim of authority to keep information from the public and, even, from the Congress." (2 U.S. Code Cong. & Admin. News 3352 (1958); see *Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1978).) The Court noted that nothing in section 301's legislative history indicated that Congress intended the statute to be a grant of authority to withhold information from the public. (*Chrysler Corp. v. Brown*, 441 U.S. 281,

310 (1978).)

In state court the federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena. Thus, a state-court litigant must request the documents from the federal agency pursuant to the agency's regulations. (*Houston Bus. Journal v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996).) If the agency refuses to produce the requested documents, the sole remedy for the state-court litigant is to file a collateral action in federal court under the APA. (*Id.*)

*Saunders* does not stand for the proposition that an agency has unfettered discretion to refuse legitimate discovery requests. (*Saunders v. Great W. Sugar Co.*, 396 F.2d 794, 795 (10th Cir. 1968).) Rather, *Saunders* contemplates that the agency will be forced to justify its basis in a court of competent jurisdiction, that there is, "[s]ome remedy." (*Id.*)

The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of his employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. (U.S.C. § 301 (1982).)

Here, Plaintiffs' counsel has repeatedly expressed their willingness to make very effort to minimize the burden to the FDA. Plaintiffs are willing to take the deposition after normal work hours or on the weekend, to limit the time of Mr. Gordon's deposition, and to videotape the deposition for trial to avoid any potential that Mr. Gordon will need to testify at trial. Plaintiffs' counsel have described in multiple letters how this discovery will and does serve the public interest and advance the mission of the FDA. The FDA along with the California Department of Food and Agriculture has investigated and sanctioned Western Milling for putting medicated feed in non-medicated feed, causing death and permanent harm to animals. This is a huge public interest for the State of California, and consumer groups are watching this matter to make sure that other feed manufacturing companies do not feel complacent with their practices.

There is no indication that the FDA made any effort to discern the magnitude of inconvenience involved in Plaintiffs' request, nor considered whether any accommodations might be made to permit this essential deposition to be completed. Rather, every indication is that the FDA's denial letters are

BARADAT & PABOOJIAN
720 West Alluvial Avenue
Fresno, CA 93711

automatic form letters that deny all such requests, categorically refusing to even contemplate letting the discovery take place. (Stirrup Decl. ¶ 10, Exhibits "E" and "F.")

As discussed in Plaintiffs' letters, this discovery is needed to prove essential elements to 37 clients' claims. Mr. Gordon is a percipient witness to statements, in fact, he is the only percipient witness to statements made by Western Milling's CEO. Without this discovery, Plaintiffs will be prevented from introducing admissible evidence supporting their legal claims. Without this discovery, Plaintiffs will be prejudicially limited in their pursuit of justice for the negligence and intentional wrongs committed by Western Milling. However, most importantly, without this discovery, the mission of the FDA will not be advanced due to the consumer groups that are watching this case to make sure that other feed manufacturing companies do not feel complacent in their practices like Western Milling.

## CONCLUSION

It is inconceivable that Congress ever intended to grant federal agencies the power to categorically and unilaterally decide what evidence they will disclose in response to discovery requests. Accordingly, to permit the parties in this case to have reasonable access to critical evidence, Plaintiffs respectfully ask this Court to issue an order directing the FDA to permit the deposition testimony of Thomas Gordon as soon as reasonably possible. Plaintiffs will make every effort to accommodate the FDA and Mr. Gordon to minimize, if not eliminate, any inconvenience this discovery will cause (i.e., scheduling his deposition outside his normal work hours and limiting the time of his deposition).

Dated: April 25, 2018

BARADAT & PABOOJIAN, INC.

By: ______________________
Warren R. Paboojian
Adam B. Stirrup
Attorneys for Plaintiffs